# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TODD R. BECKLEY, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-03082-CJW <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

The plaintiff, Todd R. Beckley (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 401 *et seq*. For the reasons that follow, the Court affirms the Commissioner's decision.

## II.   BACKGROUND

For this background, the Court relied on the administrative record (AR) and the Joint Stipulation of Facts (Doc. 15). Claimant was born in 1969. (AR 253, 313). Claimant's past relevant work included work as a police officer (AR 270-74, 277, 290, 366-67) and as a sailor in the United States Navy (AR 277, 290, 455).

Claimant filed his DIB application on October 16, 2012, with an alleged onset date of June 22, 2011.[1] (AR 29, 253). The Commissioner denied claimant's application on initial consideration on June 17, 2013, and again denied upon reconsideration on September 5, 2013. (AR 108, 123-24, 125, 143). On October 6, 2014, Administrative Law Judge (ALJ) Tom Andrews held a hearing on claimant's case. (AR 54-79). On February 5, 2015, the ALJ found claimant was not disabled from June 20, 2012, to the date of his decision. (AR 29-45). On May 2, 2016, the Appeals Council denied review. (AR 1). The ALJ's decision thus became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Claimant filed a complaint (Doc. 3) with this Court on July 6, 2016, seeking review of the ALJ's decision. On September 16, 2016, with the consent of the parties, the Honorable Leonard T. Strand, United States District Court Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. (Doc. 11). The parties filed briefs and on February 2, 2017, this case was deemed fully briefed and ready for decision.

### III. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not

---

[1] Claimant previously filed an application for benefits on August 3, 2011. The Commissioner denied that claim on June 19, 2012. (AR 29). So the effective onset date for purposes of the present application is June 20, 2012.

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b)).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow

him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. §423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

## IV. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant has not engaged in substantial gainful activity since June 20, 2012. (AR 31).

At Step Two, the ALJ found that claimant has the following severe impairments: moderate degenerative disc disease at L4-L5 and L5-S1; non-obstructive coronary artery disease, status post myocardial infarctions and cerebrovascular accidents in 2010, status post stenting; and depression. *Id*. The ALJ noted that claimant also had a history of diabetes and had Factor V Leiden mutation disease, but found those conditions to be non-severe. (AR 31-32).

At Step Three, the ALJ found that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 32).

At Step Four, the ALJ found that claimant had the following residual functional capacity:

> [Claimant] should never climb ladders, ropes, poles, or scaffolds. He should no more than occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. He should no more than occasionally be exposed to extremes of cold. He should not be exposed to respiratory or pulmonary irritants such as fumes, odors, dusts and gases. He should have no exposure to hazards presented by unprotected heights and elevations. He should have no more than occasional exposure to dangerous unguarded moving machinery or parts. He should have no more than occasional interaction with the general public, coworkers and supervisors. The work tasks should be unskilled with an SVP [skilled vocational preparation time] of 1 or 2. There should be no more than occasional changes in the work setting. The work itself should be performed at no more than a regular pace with no fast-paced or strict quota based requirements; no assembly line work requirements involving constant activity or work tasks performed sequentially and in rapid succession.

(AR 33-34). The ALJ also determined that claimant could not perform past relevant work as a police officer. (AR 43).

Finally, at Step Five, the ALJ concluded that given claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform. (AR 43). Relying on the testimony of a vocational expert, the ALJ found claimant could perform the following jobs: retail marker, mail clerk, and laundry sorter. (AR 44).

## V. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline*, 939 F.2d at 564).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe*

*v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI. DISCUSSION

Claimant alleges that the ALJ erred in four ways:

1. Substantial evidence does not support the ALJ's evaluation of the opinion evidence. (Doc. 16, at 2-4);

2. The ALJ erred as a matter of law in failing to provide any legitimate reason for rejecting the opinion of Dr. Rogers, a consulting psychologist. (Doc. 16, at 4-7);

3. Substantial evidence does not support the ALJ's credibility determination. (Doc. 16, at 7-9); and

4. The ALJ improperly applied the doctrine of *res judicata* to Beckley's claim. (Doc. 16, at 9-11).

The Court will address each of these argument in turn.

### A.     *Whether Substantial Evidence Supported the ALJ's Decision*

Claimant argues that substantial evidence did not support the ALJ's decision because he did not afford claimant's treating physician's opinion controlling weight and did not adequately discuss the reasons for his decision. (Doc. 16, at 2-4). Claimant also alleges the ALJ failed to further develop the record if the ALJ had doubts regarding Dr. Benjers' opinion. (*Id.*).

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). An ALJ is required to give "controlling weight" to a treating-source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (holding that an ALJ must give "substantial weight" to a treating physician, but may discount that weight if the opinion is inconsistent with other medical evidence). An ALJ is not, however, required to explicitly discuss every factor in 20 C.F.R. § 404.1527. *See Molnar v. Colvin*, No. 4:12-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013) ("[A]lthough the ALJ did not explicitly discuss every factor of 20 C.F.R. § 404.1527(c) in evaluating the opinions of Plaintiff's treating sources, the ALJ was not required to do so.") (unpublished) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 1998) (the ALJ need not discuss every piece of evidence submitted, and failure to discuss certain evidence does not mean that it was not considered)).

Here, the ALJ reviewed Dr. Benjers' opinions at length. (AR 38-39). The ALJ indicated that, upon a review of the records, however, he was, "unfortunately, unable to attribute weight to the opinions." (AR 38). This was, in part, because the ALJ found the

doctor's findings internally inconsistent. (AR 39). The ALJ found Dr. Benjers' treatment notes recite claimant's symptoms, but do not provide any objective findings or signs that would support those symptoms. (*Id*.). Rather, the doctor's notes lacked any indication of the symptoms and limitations the doctor found claimant had. (*Id*.). Dr. Benjers' notes reflect claimant complained of occasional chest pain and shortness of breath, but "unremarkable" physical cardiovascular and extremity examination results, with no sign of edema or focal neurological deficits. (AR 1159-64). Moreover, the ALJ found Dr. Benjers' opinions relied on a complete acceptance of claimant's subjective complaints, which the ALJ found was unsupported by the record. (AR 39).

There is no absolute rule, however, that an ALJ must accept a treating physician's opinion if it conflicts with that of a non-examining physician. Rather, the ALJ is called upon to examine the entire record, consider all of the medical evidence, and assign weight to the evidence in light of the entire record. An ALJ may give the opinions from non-treating, non-examining sources more weight than a treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal citation omitted). It is, in the end, the ALJ's duty to assess all medical opinions and determine the weight given to these opinions. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (quoting *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)).

Whether the ALJ's decision not to afford weight to Dr. Benjers' opinions was within the ALJ's zone of choice, therefore, depends on the degree to which there was other medical evidence to support the ALJ's decision. In assessing the weight to be given Dr. Benjers' opinions, the ALJ relied in part on treatment records from Dr. John

Justice, a cardiologist who began caring for claimant in the fall of 2013. Dr. Justice examined claimant and found that claimant had "normal" ejection fraction and was "stable from a cardiac standpoint." (AR 1422-24). Further examinations in 2014 revealed similarly normal and stable results. (AR 1310, 1318, 1419, 1510-13). The ALJ also found Dr. Benjers' opinions inconsistent with findings by other physical examinations by Rachel Hastins, PA-C, and Dr. Joseph Latella. (AR 1099, 1103, 1144, 1146, 1267-70, 1525-28).

The ALJ also relied on the opinions of two state agency consultant doctors. (AR 35-38). An ALJ may consider state agency physicians' opinions and may rely upon them in making her findings. *See* 20 C.F.R. § 404.1527(e)(2)(i); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that it is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment). The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions directly conflict with the opinions of treating or examining sources. *See*, *e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other

11

medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08.

In sum, the Court finds that the ALJ did not err in not assigning weight to Dr. Benjers' opinions because the ALJ relied on other substantial medical evidence in the record that was inconsistent with the limitations of Dr. Benjers' opinions. The Court also finds there was evidence in the medical records from which the ALJ could reasonably conclude that Dr. Benjers' opinions were inconsistent with his own treatment notes.

Claimant argues that if the ALJ found that Doctor Benjers' opinion insufficient, he had a duty to further develop the record by requesting a clarification from Dr. Benjers. (Doc. 16, at 4). Social security disability hearings are non-adversarial proceedings. *Stormo,* 377 F.3d at 806. Accordingly, "[w]ell-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted). The ALJ's duty exists even when an attorney represents a claimant. *Id*. "There is no bright line test for determining when the [Commisioner] has … failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant "bears a heavy burden in showing the record has been inadequately developed." *Combs v. Astrue*, 243 Fed. App'x 200, 204 (8th Cir. 2007). A claimant "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Id*. *See also Haley v. Massanari*, 258 F.3d 742, 749–750 (8th Cir. 2001) (holding "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"; ALJ may issue decision without obtaining additional evidence if existing evidence provides sufficient basis for decision (quotations and citations omitted)).

Here, the ALJ referenced the medical records, opinions, and testimony at length. (AR 35-43). The ALJ was not required to further develop a record where, as here, the information presented was sufficient. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (ALJ has duty to develop record, but duty is not never-ending and ALJ is not required to disprove every possible impairment). Given the substantial evidence, the Court finds there was no crucial issue left undeveloped, so the ALJ was not required to seek additional clarifying statements. Indeed, this is not a case where the record was not sufficiently developed; it is a case where the ALJ evaluated all the information in the record and claimant simply disagrees with the ALJ's weighing of that information.

Claimant has not identified additional testing or evaluations that he claims the ALJ should have ordered. Rather, he argues that the ALJ "should have requested a clarification from [Dr. Benjers] regarding [claimant's] residual functional capacity." (Doc. 16, at 4). Claimant cites *O'Donnell v. Barnhart*, 318 F.3d 811 (8th Cir. 2003), in support of his position. In *O'Donnell*, the treating physician had a five-year relationship with the patient that included over fifty office visits. *Id*. at 814, 818. The Eighth Circuit determined that, given the "extensive treatment history" in the case, the ALJ was obligated to re-contact the treating physician. *Id*. at 818. Here, in contrast, Dr. Benjers saw claimant on four occasions in 2012. Furthermore, Dr. Benjers' opinions were significantly different from the consulting physicians' opinions. In this instance, there was substantial evidence in the record to allow the ALJ to make a fully informed decision without the need to seek a clarification from Dr. Benjers. *Haley*, 258 F.3d at 749–50. Claimant has not carried his burden of showing the record was inadequately developed.

Ultimately, it is not for this court to weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this

Court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (internal citation omitted) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome."). The Court finds there was substantial evidence in the record as a whole for the ALJ to act within his zone of choice in not assigning weight to Dr. Benjers' opinions.

### B. *Whether the ALJ Erred in Rejecting a Treating Physician's Opinion*

Claimant argues the ALJ erred when he did not assign significant weight to the opinions of Dr. Dan Rogers, Ph.D., a consulting psychologist. (Doc. 16, at 4-7). Claimant argues that the ALJ's explanation, that Dr. Rogers' opinions were inconsistent with his own findings and that Dr. Rogers relied on claimant's subjective complaints, was inadequate. (Doc. 16, at 5). Claimant argues that Dr. Rogers' opinions were not inconsistent with his treatment records. Again, claimant argues that "if the ALJ had any doubt regarding Dr. Rogers's [sic] medical source statement, he should have recontacted Dr. Rogers." (Doc. 16, at 6). Finally, claimant argues that, based on Dr. Rogers' opinion, claimant cannot perform the mental demands of unskilled work and should be deemed disabled pursuant to Social Security Rulings. (Doc. 16, at 6).

The ALJ actually discounted Dr. Rogers' opinions for multiple reasons: (1) "[t]he opinions [were] not supported by signs and findings consistent with the degree of limitation indicated."; (2) "[t]he opinions are based in part upon medical conditions alleged, and there is no indication that the psychologist has expertise or training concerning medical/physical problems."; (3) "[t]he psychologist's opinions are inconsistent with his own findings."; and (4) "[t]he opinion relies on complete acceptance of the claimant's" subjective complaints. (AR 41). Claimant's failure to

challenge the first two grounds of the ALJ's conclusion detracts from the strength of his argument.

Furthermore, there is support for the ALJ's finding that Dr. Rogers' opinions are inconsistent with his own records. Dr. Rogers' records show claimant provided a normal and unremarkable presentation with logical and goal directed thoughts, with no signs of delusions, obsessions, or compulsions. (AR 1261). At most, claimant was experiencing situational depression due to the death of one wife and departure of another. (AR 1262). Dr. Rogers found claimant was of average or higher intellectual functioning, fully oriented, had fair immediate memory retention, normal short and long-term memory, but had difficulty with abstract concepts. (*Id.*). It was within the ALJ's zone of choice to conclude that these records were inconsistent with Dr. Rogers' opinion that claimant may be distracted at times and might not be able to remember instructions, and had little endurance or patience to interact appropriately with supervisors, coworkers or the public. (AR 41). Similarly, it was within the ALJ's zone of choice to find that Dr. Rogers' reliance on claimant's subjective complaints was misplaced because, as will be discussed in the next section, there was a basis in the record for the ALJ to discount claimant's credibility as to the extent and severity of his impairments.

For the reasons stated above with regard to Dr. Rogers, the ALJ was not obligated to contact Dr. Rogers for clarification or more information. Dr. Rogers was a consulting examining psychologist who saw claimant on one occasion. This stands in stark contrast to the five-year long doctor-patient relationship the Eighth Circuit Court of Appeals found should have compelled the ALJ to contact the doctor in *O'Donnell*.

Finally, given that the Court has found there was substantial evidence in the record as a whole for the ALJ's decision in assessing weight to Dr. Rogers and

15

rejecting his opinion, then claimant's argument that the ALJ should have found claimant disabled under the Social Security rules based on that opinion fails.

### C. *Whether the ALJ Erred in His Credibility Determination*

Claimant argues the ALJ erred in discounting claimant's credibility, asserting that the ALJ erred in drawing an adverse inference from claimant's failure to comply with treatment, out-of-state travel, failure to stop smoking, and use of a cane, and improperly assessed claimant's subjective pain complaints. (Doc. 16, at 7-9).

In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." *Id*. (citing *Masterson*, 363 F.3d at 738; *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991)). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to

make." *Id*. (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218).

Here, the ALJ specifically referenced the *Polaski* factors and engaged in a proper analysis, comparing claimant's subjective complaints against the record as a whole. (AR 35-43). The ALJ properly considered the conservative treatment claimant received as inconsistent with the severity of his subjective complaints. *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding credibility determination in light of "absence of hospitalizations . . . limited treatment of symptoms, . . . [and] failure to diligently seek medical care."); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (stating that allegations of disabling pain are discredited by "evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); *Smith*, 987 F.2d at 1374-75 (holding that the ALJ properly considered the claimant's conservative treatment as inconsistent with a finding that the claimant as totally disabled).

The ALJ properly considered the fact that claimant's complaints were responsive to treatment (AR 39-42) because impairments controlled by treatment or medication suggests they are not disabling. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011); *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999). The ALJ also properly considered that there were times when claimant was noncompliant with medications and treatment (failing to take medication, restrict diet and stop smoking) (AR 39, 40, 42). *Lewis*, 353 F.3d at 646; *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001).[2] Finally, the ALJ could properly consider claimant's use of a cane where none had been recommended by treatment providers (AR 41) in assessing claimant's credibility. *Anderson v. Barnhart*, 312 F.Supp.2d 1187, 1193 (E.D. Mo. 2004).

---

[2] Claimant suggests that his noncompliance could have been due to his mental illness (Doc. 16, at 7-8), but this is pure speculation without any basis in the record before the Court.

Regarding claimant's pain, the record supports the ALJ's discounting of claimant's subjective complaints. "When assessing the credibility of a claimant's subjective allegations of pain, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Kelley*, 133 F.3d at 588. The ALJ considered claimant's work history (AR 35, 43), daily activities (AR 32, 39), and claimant's subjective complaints of pain and treatment. (AR 35-43).

In short, the ALJ conducted a proper analysis of claimant's subjective pain complaints; it is not this Court's position to re-evaluate and re-weigh the same evidence. The ALJ was in a better position than the court to assess claimant's credibility, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), and was not required to accept his subjective complaints. Here, the Court finds the ALJ reasonably assessed claimant's credibility and the evidence on the record as a whole.

### D. *Whether the ALJ Properly Applied the Res Judicata Doctrine*

Claimant argues the ALJ erred when he decided that he would not consider evidence prior to June 19, 2012, pursuant to the doctrine of *res judicata*, because the Commissioner had previously denied claimant's prior disability application that covered that period. (Doc. 16, at 9-11). Claimant argues that, instead, the ALJ should have reopened the prior application for good cause, pursuant to 20 C.R.R. § 404.989(a)(1) & (3). (*Id.*).

On August 13, 2011, claimant filed a prior application for disability benefits. (AR 285). On December 5, 2011, the Commissioner denied claimant's application initially (AR 144) and on June 19, 2012, the Commissioner denied that application on

reconsideration. (AR 148). Claimant did not further appeal that decision or timely file suit, so the June 19, 2012, decision was final.

An ALJ may dismiss a portion of a hearing request that is, like claimant's prior application, subject to the doctrine of administrative res judicata. 20 C.F.R. § 404.957(c)(1). It is well-settled that this Court lacks the jurisdiction to review the Commissioner's denial of prior applications absent a colorable constitutional claim. *Yeazel v. Apfel*, 148 F.3d 910, 911 (8th Cir. 1998). Claimant has not asserted a constitutional claim. An ALJ may also decide not to reopen a prior determination. That decision is not subject to judicial review either. 20 C.F.R. § 404.903(1).

Accordingly, the Court finds it cannot review the ALJ's decision declining to reopen claimant's prior application or applying the *res judicata* doctrine.

## VII. CONCLUSION

After a thorough review of the entire record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's decision to find claimant was not disabled. Accordingly, the Court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 25th day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa